Consolidated case numbers 19-4092 and 20-3038. First Choice Chiropractic LLC et al. versus Mike DeWine et al. Arguments not to exceed 15 minutes per side. Mr. Flowers, you may proceed for the appellants. Thank you. Good morning, your honors. My name is Paul Flowers. I represent the indicated I'd like to reserve three minutes for rebuttal. The plaintiffs in this case consist of a number of Ohio healthcare practitioners as well as a marketing company they utilize. We're here on a first and 14th amendment equal protection challenge to a anti-solicitation statute that was enacted last year very hastily. We have different interpretations of the statute in this case. Let me just say first as a matter to catch the court up in the state court proceedings we did secure an injunction against the enforcement of the anti-solicitation statute but the merits of that case are far from over so it's important that we continue with our federal claims which we're doing today. What's the basis of the injunction in state court? What is the legal basis for the injunction? What statute or provision? It's based upon the Ohio constitution's one subject clause so nothing that will have any legal relevance to the first amendment equal protection challenges in this case. We have two different interpretations of this statute. I think we all agree that at a minimum it prohibits health care practitioners from contacting or communicating with victims of accidents or crimes within the first 30 days of the incident except through the U.S. mail system. We maintain that when the statute is read literally it actually prohibits all forms of communications within the first 30 days except for the U.S. mail. That prohibition against the U.S. mail continues indefinitely thereafter and because the term communication has not been defined in the statute it would logically apply to all sorts of advertising including public advertising, television advertising, internet advertising and so forth. Nothing can be communicated to accident victims except through the U.S. mail indefinitely. That's our interpretation but under either interpretation we maintain that the state cannot satisfy its burden of establishing that this enactment survives a constitutional muster. The extent that there are two reasonable interpretations of the statute seems a little odd that you would select the interpretation that is most harmful to your clients. Well that is because I'm being a cautious attorney here. First of all, I mean we applaud caution. Thank you. I think there's only one reasonable interpretation. There's several unreasonable interpretations but I have to think about what's going to happen in the future. How are future judges going to look at this when they apply it and also look at the health care practitioners. I mean when they read this law are they going to read it the way I am and then the right they will not exercise their rights out of fear that they're going to lose their licenses because they read this as a flat prohibition and limitation to the U.S. mail indefinitely. So yeah I have to take the worst case scenario and it's the reasonable worst case scenario and it's really what this court said in Silverman. I mean the court in Silverman said you know we're going to apply this as it reads. We're not going to really rework it to get to a version that the because it's going to come up again and again for years and years unless this court intercedes. Getting to that to the first amendment challenge I think it's very important to set the standard to be applied in this case and to be clear we maintain that whether under a heightened standard or an intermediate standard the state can't satisfy its burden of establishing the constitutionality of the statute. First no one's disputing that this is a prior restraint on speech. Second it's plainly content-based. I mean the very purpose of this statute is to restrict communications for solicitation of medical employment. They can talk about anything else they can't talk about that. And then thirdly and importantly it's also speaker-based. I mean this statute is targeted directly to health care practitioners and marketing companies they use. Everyone else is free to continue within the ethical restrictions on their professions which for insurance representatives and auto body shop representatives so forth that's no restriction at all. So it's content-based and speaker-based. So how do you distinguish this case from the Florida Bar case that the Supreme Court decided? Well the Florida Bar case I mean we're on board with it. I mean the Florida Bar case says the state has a heavy burden and in that case you know it was dealing with attorneys. They had a very lengthy report in front of the legislature. They had affidavits. They had newspaper articles. They had a really robust legislative record and the court said that that survived constitutional muster. And remember I don't know why. So you say there's not enough record here where there was in Florida but there's not in Ohio for this. This is a similar ban isn't it as was in the Florida Bar case? I can't say that. This ban. Yeah I'm sorry go ahead. Oh yeah this ban goes far beyond any ban I've ever seen to any profession and that's because of the second sentences in both subsections B and C that say no person should. I'm sorry I'm getting the wrong statute. Well Florida Bar said you could not use the U.S. mail at all in the 30-day period and here the Ohio law says you can use the U.S. mail during the 30-day period. So this this is not as onerous as the Florida Bar statute was is it? No it is. The second sentences of B and C are any communication to obtain professional employment shall be sent via the United States Postal Service. I mean the chiropractic board and its own regulations defines communications to mean advertising. So this goes far beyond just contact. So you know if somebody a mental practitioner has a billboard up and an accident victim sees it within 30 days that's a violation. But I think the more important thing about Florida Bar is just how healthy the record was. Here before the 133rd Ohio General Assembly there was no record. Zero. There were no hearings. I thought that there had been hearings. I don't know that there were before this particular session of the General Assembly but there's reference in the record to hearings about solicitation of accident and crime victims and the hearing of testimony from both proponents and opponents. Are you telling me that just didn't happen? Or are you kind of playing with the words and saying it didn't happen in the session in which the legislation was enacted? Oh that's exactly what I'm saying. I don't think that's playing with words. I think that's historically accurate. We have no reason to believe that the 133rd General Assembly looked back to what happened in the 132nd General Assembly and borrowed that information. Which is implausible because this act the one we're hearing today was adopted in a matter of bi-annual budget bill that the legislators had to pass. You know it's a trick they do when they just want to slip something through without any debate on it. So I am not playing word games and I'm sure if he's asked directly my opposing council will agree that there were no hearings before the 133rd General Assembly. But you don't deny that hearings had previously occurred and the subject is close. It's not even close. So in the 132nd General Assembly, the prior one, a bill came up, Senate Bill 148. The only thing that that bill was going to do was allow or was to require the officers investigating accidents to indicate on the report whether any of the people involved wanted to be contacted for solicitation. And it didn't limit anybody's free speech rights. All it said was if they indicate no then that information cannot be used to contact them. You can still contact them. I just have one other question about this. Florida Bar did not require the building of an evidentiary record through hearings. I mean Florida Bar says anecdotal evidence is enough. Isn't that right? It doesn't say it's enough. It can include anecdotal evidence. I mean, Edenfield versus Fain says we're not going to engage in speculation. And that's what we have here. So even assuming this court wants to be the first one to say, okay, you could reach back to prior legislative sessions and use that record. This record here, it's more helpful to us than it is for them. Now we didn't know it was going to be in this case until the magistrate's opinion came out and it was cited to the internet where he apparently downloaded it on his own without giving us any chance to respond. We read through it afterwards and it's far more against the measure than for it. And it doesn't by any means single out healthcare practitioners. There's quite a bit in there, anecdotal, unauthenticated, unsworn, but there's quite a bit in there about insurance representatives pressuring these people, auto body shop sale, representatives pressuring these people after accidents, even a gravestone salesman pressuring people. It's a whole smorgasbord of contact being made following these accidents. Maybe a bit of which is from medical practitioners and they plainly been singled out here. And if you look at it, I mean, that record, you have at best a handful of people complaining in a state of 11 people. You have at best a handful of people complaining. Any one of them could have stopped it just by signing up for the do not call registry. There's nothing in there that justifies this legislation where we prohibit contact with everyone, which is plainly overbroad. I mean, if people aren't signing up for the do not call registry, the presumption is they don't mind being contacted. And there's a lot of people who receive these calls, follow up on these calls and get the treatment, which is exactly why this was passed, because it's effective form of communication. There's three reasons why a record was required here, a real exploration of whether this is really a problem in Ohio. I mean, the first is that, as I just said, we have the do not call registry. In those prior decisions, Capa, Bianco and Silverman, the do not call registry was in its infancy. Second of all, we have the Public Records Act. That's what the defendants call it. It was part of the same Biano budget bill. And what that said was that if it said for any accident report, the telephone numbers for the accident victims can be redacted. That went into effect in October. It's really doubtful that we still need this kind of measure if that's in force. And the state court injunction did not have strict regulations against deceptive and misleading advertising. So with that, we would ask you to reverse the district court below. Thank you, Mr. Peterson. Your Honor, may it please the court. This case can and should be resolved on the basis of precedent. The court in Capa, Bianco, upheld a largely identical Tennessee restriction on the solicitation of accident victims. And that decision, in turn, rested on the U.S. Supreme Court's decision in Florida Bar Review. The chiropractors have offered a variety of reasons why the court should depart from precedent. And we suggest to the court that there are three reasons it should not. First, their reading of the statute is inconsistent with its plain text, and at the minimum, inconsistent with the canon of constitutional avoidance that would compel the court to adopt a reading that even they and their briefs acknowledge is constitutionally friendly in their own words. Second, their argument for heightened scrutiny is based on a misreading of Sorrell. Sorrell made no changes to Central Hudson. And finally, their discussion of the evidentiary record is both inconsistent with precedent in Florida Bar and inconsistent with the reality of what actually happened here. And I'd like to begin with the plain language of the statute, as one must, both because you always need to begin with the language of the statute, but also, I think, in response to Judge Bush's one question, you saw how much of their argument really rides on this misinterpretation of the statute. Judge Bush, you had asked, how does this compare to Florida Bar? In response, my friend on the other side had said, well, this is more stringent. But it's only more stringent if you adopt their reading of the statute that ignores what the statute actually says. And here, Revised Code 1349.05, particularly B and C, has two sentences. And what Mr. Flowers would have you do is read that second sentence entirely out of context. But this court is must read the statute as the Ohio Supreme Court would. And the Ohio Supreme Court has explicitly condemned efforts to read one sentence in isolation. And so what you have here is you have two sentences. The first sentence says, here's what you may not do. You may not contact accident victims for 30 days if you use any of these means. And then the second sentence says, in those 30 days, here's what you may do. You may use the US mail. And that gives effect to both sentences. Now, sure, there's a bit of redundancy. But there's still some clarity work done by each sentence. And the US Supreme Court's recent CERCLA decision, Atlantic Richfield, acknowledged that sometimes the better reading of a statute contains some redundancy. There's no problem with a belt and suspenders approach. Now, if you look at their reading of the statute, their sentence, if they focus only on the second sentence, then the first sentence does absolutely no work. It doesn't bring clarity. It doesn't do anything. And so it is their reading that renders the statute superfluous. And so we would begin by then saying that their reading of the statute is simply incorrect. But even beyond that, even if the court agrees with us, it should reject their further arguments, their arguments based on Sorrell and their arguments based on the evidentiary record. With respect to Sorrell, Sorrell did not modify the central Hudson standard. And just as the chiropractors ignore the first half of revised code 1349.05, they ignore the second half of the Sorrell decision. So if you look to part 2B of the Sorrell opinion, it engages in a very traditional central Hudson analysis. And before it begins that analysis, it first acknowledges that content-based restrictions are sometimes permissible, and that that principle applies to commercial speech. It finds it unnecessary to determine whether the statute at issue in Sorrell includes both commercial and non-commercial speech, because it finds that ultimately, if you apply a traditional commercial speech analysis, it would fail under central Hudson's familiar three or four prongs, depending on how you count them. And confirming that the Sorrell did not work any significant change to central Hudson, I point the court to its own recent decision in Bevin, which sit on the wrong side of that, unfortunately, our statute was struck down. But the court applied a traditional central Hudson analysis, and it found that the simply that the state statute was unambiguous, and it was with something my friend had said, is that there's only one reasonable interpretation of the statute, but it's the only reasonable interpretation is the one that we advanced. And one further about central Hudson and its standard, I think there is disagreement over whether this could be classified as a prior restraint. Prior restraint is not how my friend on your side has used it today. It is traditionally just used to describe an administrative or a judicial order forbidding certain communications in advance. Central Hudson and 13 suggest that prior restraint doesn't even come into play when you're talking about commercial speech in a traditional commercial speech analysis. And then finally, with respect to the evidentiary record, we think that the argument is both incorrect as a matter of law, and it is incorrect as a factual matter. Judge Gibbons, you noted that Florida Bar said that you don't need a weighty significant. I'm sorry, Judge Heinrich. Well, I'm losing some of it. I'll begin again. I'm not sure whether there was a question, but okay, I have no. I was just losing part of his speech. Yeah, it was. It was. There was a little bit of an issue. Why don't you sort of go back to the beginning of that point? Okay. All right. Thank you very much, Your Honors. I'll begin with the evidentiary point, and the point I think that the arguments, the challenge based on the evidentiary record is wrong as a matter of law and as a factual matter. As a matter of law, Judge Gibbons, you had asked about Florida Bar, and you're absolutely correct. Florida Bar says that you don't need a weighty evidentiary record, that anecdotal evidence from other jurisdictions is sufficient, and even in the realm of strict scrutiny, that is a higher level of scrutiny than applies here, common sense would be enough. And so given this court's decisions in Capobianco and its unpublished order from 2016 in Chiropractors United, we think that there's ample anecdotal evidence to support this restriction based on the experiences of Tennessee and Kentucky. And one thing I would note about Capobianco is Capobianco pointed back to the decision in Silverman, and with respect to the second and third prongs or the third and fourth prongs of Central Hudson, depending on how you count them, that is the state's interest and whether the restriction advances that interest, the court in Capobianco noted it was not writing on a clean slate, and it pointed to Silverman, and Silverman was an unpublished decision, and so to the extent that the court in Capobianco felt that it was not writing on a clean slate, even more so the court here with Capobianco as a published decision is also not writing on a clean slate. And so we think that that alone is sufficient to uphold the identical restrictions, the largely identical restrictions that are at issue here versus Capobianco. But even so, we think that the evidence that was before the General Assembly at a minimum taken together with Capobianco and Chambers and Silverman and Florida Bar is more than sufficient to satisfy the Central Hudson and Florida Bar standards. And we would say, point one, there's some question about whether this legislative history was introduced in the 28 page, page ID 298 where we cited that legislative history in our answer. And so this was not something that was new, it was part of our answer. And the testimony before the legislature was ample to show that solicitation of accident victims in the days following is problematic. There was even testimony from a representative of first choice who acknowledged that there were sometimes problematic solicitations on behalf of chiropractors and argued simply that further legislation wasn't the best way to deal with it. Now that's a question for the General Assembly. And under the final prong, the well-tailored prong of Central Hudson, you don't have to have the perfect fit, it's not a least restrictive means test, it just has to have a test in scope and proportion to the interest served. And certainly the General to take account of this court's decisions upholding similar solicitation restrictions when crafting its own restriction. It did not need to take advantage of some of these alternative opportunities. And I would say that one of the opportunities that have been suggested, one of the other ways to deal with this is the do not call list. The do not call list is much broader. It is less well-tailored because here this is a restriction that only applies in the certain types of calls. The do not call registry, no one could ever call you. And maybe someone wishes to be called about new siding or house painting or other things, and they shouldn't have to give up that just to avoid being troubled at a time that the US Supreme Court recognized in Florida Bar and this court has recognized people are especially sensitive in the days and month following an accident. And finally, touching on the equal protection component, this court has already said in chambers in Capobianco that a law that survives central Hudson, that survives intermediate scrutiny is more than adequate to satisfy the requirements of the equal protection clause. But even putting that binding precedent aside here, the only entities to which the attorneys in Ohio face a greater restriction than do people covered by revised code 1349.05. Attorneys are always barred from direct solicitation by phone, for example. And insurance companies also are not similarly situated. The statute here is a prohibition on soliciting with direct contact, I'm sorry, with an intent to obtain professional employment. Now an insurance company is not usually going to be going out trying to get new business. And in many cases, you're going to want to hear from your insurance company. They're going to tell you, here's how to get your car fixed. Here's how we are going to reimburse your medical bills. And so be it your insurance company or a party that who is also involved in the accidents insurance company, there are reasons why the General Assembly would have wished to tailor this specifically to healthcare practitioners. But even if that were not the case, nothing, the court has said there is no requirement that a legislature address a problem all at once. And one final point about the evidence, I'm going back to Judge Gibbons, you would ask, well, does it matter if it was before this General Assembly or that General Assembly? Not all states even have legislative history. The state of Indiana, for example, doesn't have legislative history. And so the test cannot rest under Florida Bar on what specifically a legislature may have considered. And if you look again to the unpublished order in Chiropractors United, for example, Chiropractors United, then there they talk about evidence that was before the district court. And so to the extent that there's a question about evidence, the question should be what evidence was before the district court. And one last point in the Edenfield opinion, or I'm sorry, in the Bevin opinion, this court suggested that maybe there's a difference between Florida Bar and other types of solicitations based on an attorney versus not attorney status. But Capobianco resolves that point. In Capobianco, the court found no basis to distinguish between attorney solicitation and others. And so for these reasons, and for the reasons articulated in our brief, and the reasons articulated in this court's own opinions in Capobianco, in Chambers, in Chiropractors United, we would ask the court to affirm the district court. And unless there are any further questions, I would yield the remainder of my time. Thanks. Flowers? Thank you, Your Honors. I'll be brief. I'll follow my colleagues' lead and start out with the Capobianco decision that was issued out of this court about 16 years ago. It was years before the Sorrell decision out of the U.S. Supreme Court, Justice Kennedy's opinion. I certainly agree with my colleague that Sorrell did not do away with the central Hudson test. And in fact, we discussed the central Hudson test at length in our briefing. What I do disagree with is the suggestion that it didn't change anything. Because Sorrell says very clearly, when you have content-based and commercial speech, we have heightened scrutiny. They're not seriously disputing that this is content-based and speaker-based. That's exactly what this legislation is directed towards. And there's now four circuits in this country that have adopted this very standard, that if it's content-based and speaker-based, we apply heightened scrutiny. We have the Second Circuit in U.S. versus Carolina, the Eleventh Circuit in Pacific Coast Horseshoeing School. Those courts all filed this. And I have yet to hear them argue that they can satisfy the heightened scrutiny test. All they've been trying to do is satisfy intermediate scrutiny with a record from a prior legislative session. Just one more point about Capobianco. In that Tennessee case, all the regulation prohibited was telemarketing and after the accident, speak directly to them. They could send FedEx deliveries. It was much narrower than we have in this case. And Capobianco is out of Tennessee. And again, you just can't say what's good for Tennessee is good for Ohio 16 years later. As I indicated, we now have the Public Records Act that was passed last year. The Do Not Call Registry is in full force in effect. We have regulatory prohibitions in Ohio that I assume are being vigorously enforced to prohibit misleading and coercive communications. And I agree, like one of our clients did during the legislative session. There are problems from time to time, but we believe legislation is not the solution because we've got all these other remedies. Legislation is now overbroad. It doesn't meet the ends. And they have no record to support that. They have a smattering of secondhand complaints, some of which involve medical practitioners in a state of 11 million people. Florida Bar, that was 1995. Different situation. It just doesn't apply here. Ed and Phil's proper test, they're relying on speculation, nothing more. I know I didn't get to talk a lot about our Equal Protection Challenge. That doesn't mean I don't care about it. I do care about it very deeply. Just let me point out that because we have First Amendment concerns, we also have under equal protection for the same reasons. So with that, we would ask you again to reverse the district court and remand the section for further proceedings. Thank you both for your argument and we'll consider the case carefully. And with that, I believe we've concluded our morning's business. Thank you to the clerk.  Thank you, Your Honor.